UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARMANDO BALDERAS, JR., DUSTIN HORN, CODY TENNANT, WILLIAM SCOBBY, OCTAVIO GONZALEZ, JAY BARTOLOME, and JON RANSOM,<br><br>                 Plaintiffs,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., an Ohio corporation,<br><br>                 Defendant. | Case No. 1:18-cv-00378-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This matter comes before the Court on Defendant United Parcel Service, Inc's ("UPS") Motion to Dismiss. Dkt. 4. On March 12, 2019, the Court held oral argument on the motion and took it under advisement. For the reasons set forth below, the Court finds good cause to GRANT the Motion to Dismiss.

## II. BACKGROUND

Plaintiffs are a group of UPS drivers. "From time to time UPS allows regular part-time employees to work as replacements for full-time package drivers . . . . When working as replacements for full-time package drivers, the part time employee[s] [are] classified as [] 'utility driver[s].'" Dkt. 1-2, at 4. The Plaintiffs worked as part-time utility drivers for UPS between November 9, 2008, and August 1, 2013. At some point after August 1, 2013, they all became full-time package drivers.

Plaintiffs contend that "[f]or at least the time period of November 9, 2008 to and through August 1, 2013, UPS agreed that time spent as a utility driver would be applied to the employees' full-time package car progression period." *Id.* According to Plaintiffs, "[t]he Progression Period determines the rate of pay an employee receives" as a full-time package driver. *Id.*[1]

After Plaintiffs became full-time package drivers, UPS allegedly refused to apply the time they spent driving as part-time utility drivers to their progression periods. As such, they contend that "UPS paid [them] at a lower hourly rate than the agreed upon hourly rate." *Id.* On February 9, 2018, Plaintiffs filed suit against UPS in Idaho state court asserting a single cause of action under the Idaho Wage Claim Act [IWCA], Idaho Code ("I.C.") §§ 45-601 et seq.

UPS removed the case to this Court on August 27, 2018. It argues that the Plaintiffs' wage claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"). This provision is codified as 29 U.S.C. § 185(a). UPS contends that under Section 301 of the LMRA, Plaintiffs' claims are "effectively federal claims" and, therefore, removal to this Court was proper. Dkt. 1.

UPS now seeks dismissal of Plaintiffs' claims pursuant to Fed R. Civ. P. 12(b)(1) because:

---

[1] UPS explains the "progression period" system as follows: "[w]hen a part-time employee is promoted to the position of a full-time driver for UPS, the labor agreements in place between UPS and its employees . . . require that the employee work a set amount of years in that full-time classification before he is eligible to receive top driver pay. Thus, where a specific employee is in terms of his respective progression period (which is a step pay scale that gradually increases over time) determines his rate of pay as a full-time package driver at any given time. Plaintiffs contend that they were promised that certain time they spent driving as part-time utility drivers for UPS would be credited to their progression periods once they became full-time package drivers." Dkt. 4-1, at 3.

MEMORANDUM DECISION AND ORDER - 2

> (1) resolution of the claims require an analysis and interpretation of the terms of a collective bargaining agreement ("CBA"), and related supplemental agreements, entered into between UPS and the Union, of which Plaintiffs are members; and (2) pursuant to the terms of the CBA and its related agreements, Plaintiffs are required to resolve their wage claims through the Union's grievance process, which includes binding arbitration, not in the courts.

Dkt. 4-1, at 2. Alternatively, "UPS also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to state a claim for loss of wages that may be heard by this Court." *Id.*

### III. LEGAL STANDARDS

   A.  Rule 12(b)(1)

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual . . . .").

If the jurisdictional attack is facial, the challenger asserts that the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering this type of jurisdictional attack, a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

MEMORANDUM DECISION AND ORDER - 3

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* Here, it appears UPS is making a factual challenge by contending that the Plaintiffs' claim must be addressed through the collective bargaining agreement.

    B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the

MEMORANDUM DECISION AND ORDER - 4

claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

Finally, in determining whether a Rule 12(b)(6) dismissal should be granted, the Court may not look at matters outside the complaint, *Schneider v. Calf. Dep't of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998). However, the Court can take judicial notice of any document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned. Fed. R. Evid. 201(f); *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982).

## IV. ANALYSIS

### A. *12(b)(1) Motion*

IWCA requires employers to "pay all wages due to their employees at least once during each calendar month." I.C. § 45-608. Plaintiffs' only cause of action alleges UPS violated this requirement by paying them less than their agreed upon wages. IWCA allows "any person [to] assert a wage claim arising under [the Act] in any court of competent jurisdiction or pursue any other remedy provided by law." I.C. § 45-615.

UPS counters that Section 301 of the LMRA preempts Plaintiffs' IWCA claim. This provision states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

MEMORANDUM DECISION AND ORDER - 5

Although this "reads as a jurisdictional statute" on its face, the Supreme Court has explained that "§ 301 is not simply jurisdictional." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). Rather, "in enacting this statute, Congress charged federal courts with a 'mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)*; see also Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104, (1962) (explaining that "in enacting [section] 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules").

The "preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted).

To determine whether the LMRA preempts a state law claim, the Court conducts a two-step inquiry. *Kobold*, 832 F.3d at 1032. First, the Court asks "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id.* "If the right exists solely as a result of the CBA, then the claim is preempted, and [the Court's] analysis ends there." *Id.* (citing *Lueck*, 471 U.S. at 212).

If, however, the right exists independently of the CBA, the Court moves to the second part of the inquiry. There, it considers whether the right is "nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Burnside*, 491 F.3d at 1059. "If such dependence exists, then the claim is preempted by section 301; if

not, then the claim can proceed under state law." *Id.* at 1059-60. The Court considers both steps of this inquiry below.

    i.    *Step one: Does the claimed right exist independent of the CBA?*

UPS contends that "the rights involved in Plaintiffs' claims (the right to recover wages due and owing) inheres not from state law, but from the CBA." Dkt. 10, at 5. If that is true, pre-emption occurs, and the Court's inquiry ends here.

The Supreme Court has instructed that when determining whether a right is independent of a CBA, "it is *the legal character* of a claim, [] independent of rights under the collective-bargaining agreement, that decides whether a state cause of action may go forward." *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (emphasis added). Only if the claim is "founded directly on rights created by [a] collective-bargaining agreement[]" does § 301 preempt it. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).

Here, it could be argued that the "legal character" of Plaintiffs' claims is simply an effort to be paid an agreed upon wage. Even though the wage itself may be dependent upon the CBA, the right to be paid an agreed upon wage exists independently of the CBA. Thus, the Court assumes, without deciding, that the first part of this inquiry is satisfied.

    ii.    *Step two: Is the right substantially dependent on analysis of the CBA?*

To determine whether a state law right is substantially dependent on the terms of the CBA, the Court asks whether the claim can be resolved by merely "looking to" the CBA, or whether it requires interpreting the CBA. *See Burnside*, (citing *Livadas*, 512 U.S. at 125; *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en

banc)). If resolving the claim simply requires "looking to" to CBA, the claim is not preempted. However, if it requires interpreting the CBA, preemption occurs.

"[I]n the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Kobold*, 832 F.3d at 1033. Additionally, "if the *claim* is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Id.* (citation and punctuation omitted) (emphasis in original).

The Ninth Circuit's decision in *Kobold* is instructive. There, the plaintiff was a nurse who belonged to a union. That union had negotiated the terms and conditions of the plaintiff's employment with her employer. The CBA stated that "nurses who work extra shifts receive premium pay at one and one-half times the regular rate." *Id.* at 1034. Eventually, the plaintiff "learned that for more than one year [her employer] had not paid her the premium rate for extra shifts worked." *Id.* Although the union filed a grievance on the plaintiff's behalf and secured a settlement that paid her the amount she was owed, the plaintiff still sued her employer for failing "to pay all wages owed her *at each pay period*," in violation of state law. *Id.* at 1035 (emphasis added).

The Ninth Circuit found that her state law claims were preempted by the LMRA. It explained:

> Before a court could calculate the total amount [plaintiff] is owed, it must determine which of the shifts she worked qualified for premium pay. The Oregon statutes under which [plaintiff] seeks relief provide only that an employee be paid "the wages due and owing to them.". . . They do not provide any means with which to assess whether wages are "due and owing." To answer that question, a court must consult the . . . CBA. In this case, because of a particular provision of the . . . CBA that is in dispute, a court

MEMORANDUM DECISION AND ORDER - 8

must interpret, not just refer to or look at, the . . . CBA.

Id. at 1035.

Here, IWCA simply requires employers to "pay all wages due to their employees." I.C. § 45-608. It does not provide any means by which to assess what wages are due and owing. That determination appears to depend on where a driver is on the progression period scale. That scale is contained within the CBA (Dkt. 4-3, at 152-154). As such, the Court would likely be required to interpret the CBA, rather than simply "look to" it. If that is the case, pre-emption occurs.

However, uncertainty exists regarding where the Plaintiffs' belief that they were promised a higher wage stems from. Plaintiffs' Complaint (as well as their briefing for this motion) is vague on this point. At oral argument, Plaintiffs' Counsel stated that this promise *may* have come from Plaintiffs' supervisors rather than the CBA—although he was unsure. Plaintiffs' Counsel also indicated that there *may* be a written agreement independent of the CBA that includes this promise, or it may have simply been an oral agreement. Plaintiffs' Complaint does not specify, nor was Plaintiffs' Counsel able to do so at the hearing.

Such vague and uncertain assertions, particularly when raised for the first time at oral argument, are frustrating for the Court, and unfair to opposing counsel. UPS filed its Motion to Dismiss on September 4, 2018. Due to scheduling conflicts, oral argument was delayed twice, and ultimately did not occur until approximately six months after UPS filed its motion. Plaintiffs have had more than enough time to raise this argument, and

absolutely should have included it in their briefing. Instead, both the Court and opposing counsel proceeded as if Plaintiffs were relying on a different interpretation of the CBA, because Plaintiffs never indicated otherwise.

The Court now finds itself unsure of whether a separate agreement existed between the parties or not. Nevertheless, when subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics*, 912 F.2d at 1092. Here, Plaintiffs' vague assertion that there *might* be a separate agreement outside of the CBA does not meet this burden, and the Court will proceed as if no separate agreement exists.

Accordingly, for the reasons set forth above, the Court finds that § 301 of the LMRA pre-empts Plaintiffs' state law claim, and GRANTS UPS' Motion to Dismiss. "Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988). Drawing from this principle, the Court deems it proper to dismiss this case WITHOUT PREJUDICE so that Plaintiffs—if a separate agreement really did exist—may reassert their claim and include information regarding that agreement in their Amended Complaint.

### B. *12(b)(6) Motion*

Where a CBA contains a mandatory grievance procedure, that procedure must be exhausted before the Court may hear a claim for breach of contract under the LMRA. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *see also Carr v. Pacific Maritime Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990). There are three

exceptions to this exhaustion requirement: (1) where the employee's use of the procedure would be futile; (2) where the employer has repudiated the CBA; and (3) where the Union has breached its duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 185-86 (1967).

Here, the CBA between Plaintiffs' and UPS states that "[a]ll grievances and/or questions of interpretation arising under the provisions of this National Master Agreement *shall be* resolved in the following manner . . . ." Dkt. 4-3, at 27 (emphasis added). The CBA then outlines a multi-step grievance process that (if resolved by majority vote by the grievance committee) "shall be final and binding upon all parties." *Id.*

Plaintiffs' Complaint does not contain any facts that allow the Court to infer that they exhausted this mandatory grievance procedure, that doing so would be futile, that UPS repudiated the CBA, or that the union breached its duty of fair representation.

However, for the same reasons set forth above, the Court is unsure whether this dispute actually involves competing interpretations of the CBA (which, under the terms of the CBA, must first go through UPS' grievance procedure), or whether a separate agreement exists that is not governed by the CBA. Because the Court has already found dismissal proper under Rule 12(b)(1), it need not determine whether dismissal is also proper under Rule 12(b)(6).

### V. ORDER

The Court hereby orders:

1. UPS' Motion to Dismiss (Dkt. 4) is **GRANTED**.

2. Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. The Court **GRANTS** Plaintiffs leave to file an Amended Complaint. Plaintiffs have thirty (30) days to do so. Failure to file an Amended Complaint within the ordered timeframe will result in the full dismissal of this case WITH PREJUDICE and without further notice.

DATED: May 1, 2019

David C. Nye
Chief U.S. District Court Judge