UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARMANDO BALDERAS, JR., DUSTIN HORN, CODY TENNANT, WILLIAM SCOBBY, OCTAVIO GONZALEZ, JAY BARTOLOME, and JON RANSOM,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., an Ohio corporation,<br><br>Defendant. | Case No. 1:18-cv-00378-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

This matter comes before the Court on Defendant United Parcel Service, Inc.'s ("UPS") Motion to Dismiss Amended Complaint ("Motion"). Dkt. 19. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument,[1] the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court finds good cause to GRANT the Motion.

---

[1] The Court heard oral argument on UPS's first Motion to Dismiss on March 12, 2019, which is substantially similar to the Motion now before the Court.

MEMORANDUM DECISION AND ORDER – 1

## II. BACKGROUND

The background of this case is set forth in the Court's prior order. Dkt. 16.. The Court hereby incorporates that background by reference. In short, the Court granted UPS's initial Motion to Dismiss, holding that, as alleged, Plaintiffs' Complaint was substantially dependent on the parties' collective bargaining agreement ("CBA")[2] and thus Plaintiffs' sole cause of action was preempted by § 301 of the Labor Management Relations Act ("LRMA"). However, the Court allowed Plaintiffs thirty (30) days to file an amended complaint.

Plaintiffs filed their Amended Complaint (Dkt. 17), again alleging one claim under the Idaho Wage Claim Act, Idaho Code §§ 45–601, *et seq.* ("IWCA"). The Amended Complaint differs from the original Complaint in only two ways. First, Plaintiffs reference the Letter of Understanding Regarding Utility Drivers Between United Parcel Service and Teamsters Local 483 ("LOU"), a document that reflects Plaintiffs' labor union and UPS's understanding of the CBA as it relates to utility drivers. The LOU allows for hours worked as utility drivers to be credited towards employees' progression periods once they became full-time package drivers. Second, Plaintiffs allege they exhausted their remedies under the terms of the CBA when the UPS Grievance Committee ("Committee") dismissed their grievance regarding the very issues now before the Court.

---

[2] The collective agreement as referenced by the Court refers to three agreements: the National Master United Parcel Service Agreement for the Period December 19, 2007 through July 31, 2013; the Western Region of Teamsters United Parcel Service Supplemental Agreement for the Period December 19, 2007 through July 31, 2013; and the Teamsters Joint Council No. 37 Package Rider to the National Master United Parcel Service, Inc. Agreement for the Period of December 19, 2007 to July 31, 2013. For purposes of this Order, these three agreements will collectively be referred to as the CBA.

UPS filed the instant Motion, seeking to dismiss the Amended Complaint under Rule 12(b)(1) or, alternatively, 12(b)(6) of the Federal Rules of Civil Procedure.

### III. LEGAL STANDARD

1. **Rule 12(b)(1)**

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. See *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual."). If the jurisdictional attack is facial, the challenger asserts that the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering this type of jurisdictional attack, a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for

summary judgment. *Id*. Here, as it did in its previous motion, UPS makes a factual challenge by contending that the Plaintiffs' claim must be addressed through the CBA.

2. **Rule 12(b)(6)**

Rule 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570. In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

Finally, in determining whether a Rule 12(b)(6) dismissal should be granted,

the Court may not look at matters outside the complaint. *Schneider v. Calf. Dep't of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998). However, the Court can take judicial notice of any document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned. Fed. R. Evid. 201(f); *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982).

## IV. ANALYSIS

The Court has already provided a thorough analysis on the interplay between Plaintiffs' IWCA claim, the CBA, and § 301 of the LMRA. Dkt. 16, at 5-11. That analysis is hereby incorporated by reference.

1. **Summary of Previous Analysis**

In brief, Plaintiffs bring a cause of action under the IWCA, which requires employers to "pay all wages due to their employees at least once during each calendar month." Idaho Code § 45–608 (2014). However, UPS contends that § 301 of the LMRA preempts this cause of action. To resolve this contention, the Court first "must determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and the analysis ends there." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (internal quotations omitted). If the right exists independently of the CBA, however, the Court must still decide if "the right is nevertheless substantially dependent on analysis of [the CBA]." *Id.* (internal quotations omitted). If it is, § 301 preempts Plaintiffs' claim.

Here, the legal character of Plaintiffs' claim is the right to be paid an agreed upon wage. This right is founded on state law and exists independently of the CBA. Put differently, if there was no CBA, there still would be a right to be paid an agreed upon wage. Because the first step of § 301 analysis preempts a claim only if the claim is "founded directly on rights created by [a CBA]," *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394 (1987), there is no such preemption here. Thus, the Court turns to step two of the analysis.

To determine whether a state law right is substantially dependent on the terms of the CBA, the Court asks whether the claim can be resolved by merely "looking to" the CBA, or whether it requires interpreting the CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1071 (9th Cir. 2007). "[I]n the context of § 301 complete preemption, the term 'interpret' is defined narrowly–it means something more than 'consider,' 'refer to,' or 'apply.'" *Kobold*, 832 F.3d at 1033.

Here, the Court determined it would have to interpret the CBA, rather than look to it, to determine what wages are due and owing. However, Plaintiffs' suggested for the first time at oral argument on the initial Motion to Dismiss that a separate agreement might exist that allowed them to be paid at a higher rate. However they were unable to reference any such agreement specifically.

Because the existence of a separate agreement not governed by the CBA might give Plaintiffs a viable claim, but neither counsel nor the Complaint identified any such agreement, the Court granted UPS's initial Motion to Dismiss without prejudice. Plaintiffs subsequently filed their Amended Complaint with allegations regarding a purported separate agreement. Specifically, Plaintiffs alleged that the LOU was a separate agreement,

independent from the CBA, under which UPS agreed that time spent as a utility driver would be applied to Plaintiffs' progression period.[3]

### 2. First Prong

Nothing in the Amended Complaint prompts the Court to change its previous analysis. As to the first prong of analysis outlined in *Kobold*, the right to be paid wages due and owing exists independently of the CBA. UPS contends that Plaintiffs' claim is not for wages due, but is one for a *higher* wage than what they received. This higher rate is based on the time Plaintiffs spent as utility drivers, pursuant to the LOU. The right to a higher wage, UPS argues, is founded directly on the CBA and not Idaho law.

The Court does not share such a strained reading of the Amended Complaint. The IWCA provides that "[e]mployers shall pay all wages due to their employees at least once during each calendar month . . . ." Idaho Code § 45–608(1) (2014). Though the statute does not—and logically could not—provide an exact dollar figure for "all wages due," an employee's right to be paid "all wages due" comes from Idaho's statute, not the CBA. How much an employee is paid depends on the agreement between that employee and his employer, such as the CBA in this case, but the right to be paid "all wages due" does not arise from that agreement. Thus, Plaintiffs' claim for wages due to them—however much higher they are—exists independently of the CBA.

---

[3] Plaintiffs did not include the LOU with their Amended Complaint. However, UPS filed a copy of the LOU with their Motion to Dismiss. Dkt. 19-2, Ex. A. Since the Amended Complaint describes the contents of the LOU and relies upon it as support for Plaintiffs' claims, the Court considers the LOU incorporated by reference and takes judicial notice of the LOU. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

### 3. Second Prong

Because Plaintiffs' claim exists independently of the CBA, the Court must now decide if the claim is nevertheless substantially dependent on the CBA. Before doing so, however, the Court turns its attention to the LOU and its relation to the CBA.

*A. The LOU and the CBA*

UPS asserts the LOU is not a separate agreement but is "effectively a part of the CBA." Dkt. 19-1, at 11. As support, UPS argues the LOU is an agreement made between UPS and Plaintiffs' union that was meant to govern certain employment terms in conjunction with the CBA and in fact specifically references the documents that make up the CBA. At the very least, UPS contends, it is a contract between an employer and labor organization which brings it under the application of § 301.

The Court agrees. The CBA is not a stand-alone document, but is a collective agreement made up of various other agreements which are memorialized in three different documents.[4] Likewise, the LOU is another agreement between Plaintiffs' union and UPS that is meant to govern UPS and its employees concurrently with the CBA. At a minimum, the LOU, like the CBA, is subject to § 301. Thus, for purposes of this motion, the LOU will be treated as if it was a part of the CBA. *See Bachilla v. Pac. Bell Tele. Co.*, 2007 WL 2825924, at *5 (E.D. Cal. 2007) ("[B]ecause the subject matter of [Plaintiffs'] implied contracts is a job position covered by the CBA, any independent agreement of employment concerning that position could be effective only as part of the collective bargaining

---

[4] *See supra,* note 2.

agreement, thus the CBA controls and Plaintiffs' contract claim is preempted.") (citing *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Young v. Anthony's Fish Grottos, Inc*., 830 F.2d 993, 997 (9th Cir. 1987)).

   *B. Analysis*

As explained in Section II, the LOU provides a firm basis for Plaintiffs' allegations that they should have been paid a higher wage. But it does little to persuade the Court that Plaintiffs' claim is not substantially dependent on the CBA. In fact, the LOU strengthens the Court's previous analysis.

Plaintiffs insist the Court needs only to look at, and not interpret, the CBA and the LOU. But Plaintiffs' own language betrays their position. Plaintiffs begin by explaining that, pursuant to the LOU, "[t]here is no dispute that UPS agreed that all time as a utility driver shall be applied to his/her full-time package car progressions period." *Id.* (internal quotations omitted). This alone would obligate the Court to both make the distinction between utility drivers and full-time package drivers and define what a progression period is. In other words, the Court would have to interpret these provisions. Plaintiffs would have a much better argument if this was as far as the Court was required to go, but this is just the first of many steps the Court would need to take.

Next, according to Plaintiffs, the Court must make a determination as to where each employee was on the wage scale by making a "calculation based on the date the Plaintiffs' employment began, when each plaintiff reached seniority, and time spent in a particular position." *Id.* In order to make this calculation, the Court would be required to determine the interplay between the separate documents that make up the CBA. For example, the

hourly rate for employees who had completed progressions is found in one document, the rate of employees currently in or entering into progression is set forth in another document, and to determine seniority requires consulting a third document. In all, the Court would have to examine and cross-reference four different documents (the three documents that make up the CBA and the LOU), evaluate the qualifications of each individual plaintiff as it pertains to utility drivers, and then make "calculations" based upon the relevant determinations. "Examine," "evaluate," and "calculate," are demand much more than "consider," "refer to," and "apply." *See Kobold*, 832 F.3d at 1033.

Further, UPS contends that a specific "self-disqualify" provision in the LOU caused Plaintiffs to lose any alleged credit towards their progression period.[5] According to the LOU, any employees "who self disqualify from [the] utility driver position shall not have their previous utility driver time applied to their full-time package car progression." Dkt. 19–2, at 6. In addition to conducting the exercise described above, the Court would have to first determine if the Plaintiffs "self-disqualified" from the utility driver position, a determination that would require applying additional provisions of the CBA to the facts of this case. Again, such tasks require the Court to do much more than "'consider,' 'refer to,', or 'apply'" the CBA. *Kobold,* 832 F.3d at 1033. Thus, the resolution of this matter is substantially dependent on analysis of the CBA.

  4. **IWCA Treble Damages**

Plaintiffs argue that their IWCA is not preempted because section 45–615(2) of the

---

[5] Plaintiffs do not address this argument in their Response to the instant Motion.

Idaho Code allows a plaintiff to collect treble damages in labor disputes such as this—a penalty that the CBA does not include. Plaintiffs contend that the right to treble damages exists independently of the CBA, and therefore their claim is not preempted.

Plaintiffs' position is easily dispelled with a logical reading of the statute. Under the statute, to qualify for treble damages in a wage claim a plaintiff must first obtain judgment in his favor. Idaho Code § 45–615(2) (2014) ("Any judgment rendered by a court of competent jurisdiction for the plaintiff . . . may include all costs and attorney's fees . . . and the plaintiff shall be entitled to recover . . . damages in the amount of three (3) times the unpaid wages found due and owing . . . "). The plain language of the statute states that the right to treble damages exists *only* if a plaintiff is successful in their wage claim. This means that Plaintiffs, at this current juncture, do not have a right to treble damages because they have not proven a successful claim under the IWCA. Alternatively, it could be said that the claim to treble damages is dependent on the CBA because the underlying claim is dependent on the CBA. Regardless of which way it is explained, however, the result is the same: Plaintiffs' IWCA claim is preempted by § 301 of the LMRA.

5. **Dismissal**

"If an employee pursues a grievance procedure under a collective bargaining agreement that the parties intended to be final, and receives an adverse determination, he may not challenge that determination under section 301 unless he shows that the union breached its duty of fair representation." *Dickeson v. DAW Forest Products Co.*, 827 F.2d 627, 629 (9th Cir. 1987); *see also Kobold*, 832 F.3d at 1034 ("If the dispute is not ultimately resolved by an arbitration, the employee must establish that the union violated its duty of

fair representation by failing to pursue the grievance to arbitration, or pursuing it arbitrarily.").

Here, Plaintiffs allege they pursued the CBA's grievance procedure and ultimately their grievance was dismissed, *i.e.* an adverse determination. The CBA states that the Committee's decision "shall be final and binding on both parties and the employee(s) involved, with no further appeal." Dkt. 4-4, at 23. Additionally, Plaintiffs have not alleged that their union breached its duty of fair representation or pursued the grievance arbitrarily. On the contrary, UPS presents evidence that Plaintiffs' union adequately represented Plaintiffs during the grievance procedure. *See* Dkt. 19-1, at 7. As such, Plaintiffs cannot challenge the Committee's dismissal.

If amending a complaint would remedy its deficiencies, then courts should provide plaintiffs an opportunity to do so. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). However, when an amendment would be futile, dismissal with prejudice is warranted. *See Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) ("A district court does not err in denying leave to amend where the amendment would be futile."). Plaintiffs' claim is preempted by § 301. Further, Plaintiffs cannot challenge the Committee's dismissal of their grievance under § 301 because, despite having two chances to do so, they failed to allege their union breached its duty of fair representation or pursued their grievance arbitrarily.[6]

In other words, there is an "absence of sufficient facts alleged under a cognizable legal theory" that would grant Plaintiffs their requested relief. *See Johnson*, 534 F.3d at

---

[6] Plaintiffs original Complaint similarly lacked any allegations of their union breaching its duty of fair representation.

1121. As such, UPS's Motion is GRANTED.

## V. ORDER

IT IS HEREBY ORDERED THAT:

1. UPS's Motion to Dismiss is GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE.

2. The Court will enter judgment separately in accordance with Fed. R. Civ. P. 58.

DATED: October 17, 2019

_____
David C. Nye
Chief U.S. District Court Judge